IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| THE TRAVELERS HOME AND MARINE INSURANCE COMPANY, | * * * | |
| Plaintiff, | * * | |
| v. | * * | CV 114-121 |
| RICHARD THIGPEN, DALTON DAY, RAYMOND R. MURPHY, JR., FRANK R. MURPHY, and WILLIAM E. MURPHY, Individually and as Personal Representative of the ESTATE OF AGATHA LOUISE MURPHY, | * * * * * * * | |
| Defendants. | * | |

O R D E R

Plaintiff, The Travelers Home and Marine Insurance Company ("Travelers"), filed the instant action seeking declaration from this Court that it has no obligation to defend Defendants Richard Thigpen ("Thigpen") and Dalton Day ("Day") in an underlying tort suit filed after Agatha Murphy ("Ms. Murphy") died in a fire at Thigpen's home. Now before the Court are cross motions for summary judgment filed by Day and Travelers. (Docs. 23 & 29.) These motions present a narrow issue for the Court's determination: whether Ms. Murphy was Thigpen's

"relative" at the time of the fire. Because the Court finds she was, the Court **GRANTS** summary judgment in Travelers' favor.

## I.     BACKGROUND

On November 1, 2012, a fire occurred at Thigpen's home located at 8113 Sir Galahad Drive, Evans, Georgia, 30809. (Doc. 29, Ex. A at ¶ 3; Docs. 1, 9, 11, & 15 at ¶ 10.) The fire damaged Thigpen's home and, according to a lawsuit filed by Ms. Murphy's children, caused Ms. Murphy's death. (Docs. 29-2, 32, 35-1 at ¶ 7; Doc. 41; Doc. 1, Ex. A.) At all times relevant to the fire, Thigpen maintained a homeowner's insurance policy through Travelers. (Doc. 1, Compl. Ex. B.) ("the Travelers policy".) The Travelers policy set forth certain exclusions for personal liability, the terms of which are not in dispute. (Id. at 22.) In particular, the Travelers policy expressly excluded the following from coverage:

> 6.   "Bodily injury" to you or an "insured" as defined in Definitions 7.a or b.
>
> This exclusion also applies to any claim or suit brought against you or an "insured":
>
> a.   To repay; or
> b.   Share damages with;
>
> Another person who may be obligated to pay damages because of "bodily injury" to an "insured[.]"

2

(Id.) Both "bodily injury" and "insured" are defined in the policy as follows:

> 2. "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.
>
> 7. "Insured" means:
>
>    a. You and **residents** of your household who are:
>       (1) Your **relatives**; or
>       (2) Other persons under the age of 21 and in the care any person named above.
>    b. A student enrolled in school full-time, defined by the school, who was a resident of your household before moving out to attend school, provided the student is under the age of:
>       (1) 24 and your relative; or
>       (2) 21 and in your care or the care of a person described in a.(1) above[.]

(Id. at 1-2 (emphasis added).) The Travelers policy does not define "relative." As is relevant to the instant case, for Travelers to properly avoid coverage, Ms. Murphy would have to both be a resident of the home and Thigpen's relative at the time of the fire.

At the time of the fire, it is undisputed that Thigpen, Day, and Ms. Murphy were all residents of the home. (Docs. 29-2, 32, 35-1 at ¶¶ 2, 6 (hereinafter "SMF"); Doc. 41) The true controversy in this matter centers on the second question: whether Ms. Murphy was Thigpen's relative. Thigpen was married to Ms. Murphy's daughter, Barbara Thigpen, until Barbara passed

3

away in 2002. (SMF at ¶ 4; Doc. 41.) Ms. Murphy lived in the home for approximately thirty years and Thigpen for approximately eighteen years.[1] (Doc. 29, Ex. A at 5.) Thigpen and Barbara had three children together before her passing. (SMF at ¶ 5; Doc. 41.) Day is Thigpen's nephew. (SMF at ¶ 6; Doc. 41.)

As alluded to above, following Ms. Murphy's death, her children and estate filed suit in the Superior Court of Columbia County, Georgia against Thigpen, Day, and Blake Redd. (Doc. 1, Ex. A.) With the underlying tort suit, the plaintiffs allege that the fire was caused by the negligent disposal of lit cigarettes smoked by Day and Redd. (Id. at ¶ 6.) Both Thigpen and Day have requested coverage under the Travelers policy for the claims asserted against them in the Columbia County action. (SMF at ¶ 15; Doc. 41.) On May 1, 2014, Travelers sent Thigpen and Day reservation of rights notices, wherein Travelers agreed to provide them each with a defense subject to "a full and complete reservation of its rights."[2] (Doc. 37, Ex. A.) Then, on May 22, 2014, Travelers brought the instant complaint for declaratory judgment, asserting, *inter alia*, that because Ms. Murphy was Thigpen's relative, any injuries to her are not

---

[1] Ms. Murphy originally owned the home but eventually put the house in Thigpen's name. (Doc. 29, Ex. A at 5.)

[2] A modified reservation of rights letter was sent to Day on May 19, 2014 to clarify that Travelers would defend him under a full reservation of rights. (Doc. 37, Ex. E.)

4

covered under the policy and thus Travelers is not obligated to provide coverage or a defense to Thigpen or Day.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Facts are "material" if they could affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court must view the facts in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in [its] favor." U.S. v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (internal punctuation and citations omitted).

The moving party has the initial burden of showing the Court, by reference to materials on file, the basis for the motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). How to carry this burden depends on who bears the burden of proof at trial. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). When the non-movant has the burden of proof at trial, the movant may carry the initial burden in one of two ways — by negating an essential element of the non-

5

movant's case or by showing that there is no evidence to prove a fact necessary to the non-movant's case. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Before the Court can evaluate the non-movant's response in opposition, it must first consider whether the movant has met its initial burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Jones v. City of Columbus, 120 F.3d 248, 254 (11th Cir. 1997) (per curiam). A mere conclusory statement that the non-movant cannot meet the burden at trial is insufficient. Clark, 929 F.2d at 608.

If — and only if — the movant carries its initial burden, the non-movant may avoid summary judgment only by "demonstrat[ing] that there is indeed a material issue of fact that precludes summary judgment." Id. When the non-movant bears the burden of proof at trial, the non-movant must tailor its response to the method by which the movant carried its initial burden. If the movant presents evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." Fitzpatrick, 2 F.3d at 1116. If the movant shows an absence of evidence on a

movant's case or by showing that there is no evidence to prove a fact necessary to the non-movant's case. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Before the Court can evaluate the non-movant's response in opposition, it must first consider whether the movant has met its initial burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Jones v. City of Columbus, 120 F.3d 248, 254 (11th Cir. 1997) (per curiam). A mere conclusory statement that the non-movant cannot meet the burden at trial is insufficient. Clark, 929 F.2d at 608.

If — and only if — the movant carries its initial burden, the non-movant may avoid summary judgment only by "demonstrat[ing] that there is indeed a material issue of fact that precludes summary judgment." Id. When the non-movant bears the burden of proof at trial, the non-movant must tailor its response to the method by which the movant carried its initial burden. If the movant presents evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." Fitzpatrick, 2 F.3d at 1116. If the movant shows an absence of evidence on a

material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1117. The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. See Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981). Rather, the non-movant must respond with affidavits or as otherwise provided by Federal Rule of Civil Procedure 56.

That this matter comes before the Court on cross motions for summary judgment does not alter the Court's standard of review, "but simply requires a determination of whether either of the parties deserves judgment as a matter of law on the facts that are not disputed." United States ex rel. Saldivar v. Fresenius Med. Care Holdings, Inc., 972 F. Supp. 2d 1339, 1341 (N.D. Ga. 2013) (citing Am. Bankers Ins. Grp. V. United States, 408 F.3d 1328, 1331 (11th Cir. 2005)). Accordingly, each motion must be considered "on its own merits, resolving all reasonable inferences against the party whose motion is under consideration." Id. As the Eleventh Circuit has held:

> Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed . . . . Nonetheless, cross-motions

7

may be probative of the non-existence of a factual dispute when [] they demonstrate a basic agreement concerning what legal theories and material facts are dispositive.

United States v. Oakley, 744 F.2d 1553, 1555-56 (11th Cir. 1984) (quoting Bricklayers Int'l Union, Local 15 v. Stuart Plastering Co., 512 F.2d 1017, 1023 (5th Cir. 1975)).

In this action, the Clerk of the Court gave all parties notice of the motions for summary judgment and informed them of the summary judgment rules, the right to file affidavits or other materials in opposition, and the consequences of default. (Docs. 24 & 30.) Therefore, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), are satisfied. The time for filing materials in opposition has expired, and the motions are now ripe for consideration.

### III. DISCUSSION

The parties do not dispute that the Travelers policy expressly excludes from coverage any bodily injury to an insured and that a resident relative is an "insured" for the purposes of that exclusion. Travelers argues that Ms. Murphy was, as Thigpen's mother-in-law, a relative and thus qualifies as an "insured" so that any injury suffered by her would be excluded from coverage. Specifically, Travelers contends that the term "relative" encompasses both blood-related individuals and those

8

related by marriage. Following Travelers' argument to its ultimate conclusion, because injuries suffered by Ms. Murphy would be excluded from coverage, Travelers would likewise face no obligation to defend or cover the claims against Thigpen and Day for her death. In contrast, Day contends that the Travelers policy is ambiguous because it fails to define "relative" and for that reason should be strictly construed against Travelers to include only those individuals related by blood. Before addressing the merits of the parties' claims, however, the Court first addresses whether it has subject matter jurisdiction to hear the case.

A. Subject Matter Jurisdiction

Thigpen asserts that this Court lacks subject matter jurisdiction to hear the case because "it is inconceivable that any jury would render a verdict against [him.]"[3] (Doc. 31 at 2.) Thigpen additionally argues that the amount in controversy does not exceed $75,000 and the underlying tort complaint "does not set forth an addendum[.]" (Doc. 11 at 1-2.)

In declaratory judgment actions, the jurisdictional amount is the "monetary value of the object of the litigation from the plaintiff's perspective." Owners Ins. Co. v. Bryant, No. 3:05-cv-48CAR, 2006 WL 50488, at *2 (M.D. Ga. Jan. 9, 2006). In

---

[3] The Murphy Defendants additionally raise a defense based on jurisdiction but, unlike Thigpen, do not provide any basis or argument for that defense. (Doc. 15, at 1.)

determining the object of the litigation, courts "may take into account not only the recovery sought in the underlying suit, but also the 'pecuniary value of the insurer's obligation to defend the separate lawsuit.'" Id. (quoting Stonewall Ins. Co. v. Lopez, 544 F.2d 198, 199 (5th Cir. 1976)). Ordinarily, "it must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." Federated Mut. Ins. Co. v. McKinnon Motors, 329 F.3d 805, 807 (11th Cir. 2003) (internal quotations and alteration omitted). "However, where, as here, the plaintiff in the underlying action fails to specify the total amount of damages demanded, 'the party seeking to invoke federal jurisdiction bears the burden of proving by a preponderance of the evidence that the claim on which it is basing jurisdiction meets the jurisdictional minimum.'" Owners, 2006 WL 50488, at *2 (quoting Federated Mut., 329 F.3d at 807). This burden can be satisfied where it is facially clear from the complaint that the jurisdictional amount is met or by referencing other evidence relevant to the amount in controversy. Id. Conclusory allegations, however, are insufficient to invoke jurisdiction. Id.

Though the plaintiffs in the underlying tort suit have not specified an exact amount of damages, upon the following, the Court is satisfied that Travelers has met its burden of proving the requisite amount is in controversy by a preponderance of the

10

evidence.  With the underlying complaint, the plaintiffs seek (1) the full value of Ms. Murphy's life; (2) full compensation for conscious pain and suffering; (3) medical expenses; and (4) costs for Ms. Murphy's funeral and burial.  In Thigpen's own statement to Travelers, he explained that in the last months of her life, Ms. Murphy spent most of her time in her bed and had trouble walking, the inference being that Ms. Murphy was in her bed and potentially unable to escape when the house caught fire. (See Doc. 29, Ex. A at 7.)  Indeed, the underlying tort complaint alleges that Ms. Murphy "suffered severe pain and torment before succumbing to the flames that engulfed" the house.  (Compl., Ex. A ¶ 8.)  In addition to the tort damages, Travelers faces the high cost of defending two individuals in the wrongful death action.  In the underlying case, Day and Redd are alleged to have caused the fire by improperly disposing of lit cigarettes, and Thigpen is alleged to have been negligent in failing to keep the premises clean and allowing Day and Redd to smoke cigarettes on the back porch.  (Id. ¶¶ 6-7.)

Beyond alleging that the amount in controversy has not been met, Thigpen asserts that "it is inconceivable that any jury would render a verdict against [him when], out of the goodness of his heart and friendship for his late wife's mother, [he] took care of her from the date of his late wife's death, until her death."  (Doc. 31 at 2.)  While this may be true, "the

11

plaintiffs' likelihood of success on the merits is largely irrelevant to the court's jurisdiction because the pertinent question is what is *in controversy* in the case, not how much the plaintiffs are ultimately likely to recover." See Pretka v. Kolter City Plaza II, Inc., 608 F.3d 744, 751 (11th Cir. 2010) (quoting Amoche v. Guarantee Trust Life Ins. Co., 556 F.3d 41, 51 (1st Cir. 2009)) (emphasis in original).

"[T]he court notes that the 'preponderance of the evidence' standard does not require a party to 'research, state, and prove' a plaintiff's claim for damages." Owners, 2006 WL 50488, at *2 (quoting Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353, 1357 (11th Cir. 1997)). Indeed, Travelers "can hardly be expected to hire experts to provide an estimate of the" value of Ms. Murphy's life and pain and suffering. See id. Based on the evidence provided in this case, the Court finds that Travelers has met its burden of showing by a preponderance of the evidence that the amount in controversy exceeds $75,000.

B. **Definition of "Relative"**

"Insurance in Georgia is a matter of contract and the parties to the contract of insurance are bound by its plain and unambiguous terms." Hurst v. Grange Mut. Cas. Co., 470 S.E.2d 659, 663 (Ga. 1996). In analyzing the insurance policy, Georgia law requires this Court to "first consider the ordinary and legal meaning of the words employed in the insurance contract.

An insurance policy should be read as a layman would read it." Alea London Ltd. v. Am. Home Servs., Inc., 638 F.3d 768, 773 (11th Cir. 2011) (internal quotations and citations omitted). Thus, "[u]nless otherwise defined in the insurance policy, terms in the policy are given their plain, ordinary, and popular meaning as supplied by dictionary." State Farm Fire & Cas. Co. v. Bauman, 723 S.E.2d 1, 3 (Ga. Ct. App. 2012), quoted in Garrison v. Jackson Nat'l Life Ins. Co., 908 F. Supp. 2d 1293, 1300 n.10 (N.D. Ga. 2012). "Initially, construction of the contract is a question of law for the court. When the terms of the contract are unambiguous, the court looks to the contract alone to find the parties' intent." Certain Underwriters at Lloyd's of London v. Rucker Constr., Inc., 648 S.E.2d 170, 174 (Ga. Ct. App. 2007).

An ambiguity in the policy language exists "when it is of uncertain meaning and may be fairly understood in more ways than one." Id. In that regard, Georgia law instructs that "[a]n ambiguity is duplicity, indistinctness, an uncertainty of meaning of expression[.]" Id. (quoting Collier v. State Farm Mut. Auto. Ins. Co., 549 S.E.2d 810, 812 (Ga. Ct. App. 2001)). When an ambiguity is present, Georgia courts apply the standard rules of contract construction to resolve the ambiguity. Id. at 174.

> Three well known rules apply in the construction of the contract: [a]ny ambiguities in the contract are strictly construed against the insurer as drafter of the document; any exclusion from coverage sought to be invoked by the insurer is likewise strictly construed; and [the] insurance contract[ is] to be read in accordance with the reasonable expectations of the insured where possible.

Fireman's Fund Ins. Co. v. Univ. of Ga. Athletic Ass'n, Inc., 654 S.E.2d 207, 209-10 (Ga. Ct. App. 2007) (quoting Richards v. Hanover Ins. Co., 299 S.E.2d 561, 563 (Ga. 1983)).

"[I]f the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury." RLI Ins. Co. v. Highlands on Ponce, LLC, 635 S.E.2d 168, 171 (Ga. Ct. App. 2006) (quoting Woody's Steaks v. Pastoria, 584 S.E.2d 41, 43 (Ga. Ct. App. 2003)).

In arguing that the term "relative" is ambiguous, Day and his fellow Defendants appear to make two arguments: (1) the term relative should be interpreted as only including those related by blood and (2) even if the term included those related by marriage, the death of Thigpen's wife dissolved that connection. Georgia law clearly forecloses the second argument. Rutledge v. Auto-Owners Ins. Co., 548 S.E.2d 86, 89 (Ga. Ct. App. 2001) ("The general rule is that the husband is related by affinity to the blood relatives of the wife, and the wife is likewise related to the blood relatives of the husband. This

relationship by affinity is dissolved by the death of either party to the marriage which created the affinity *provided the deceased party left no issue living*." (quoting Ga. Power Co. v. Moody, 197 S.E. 844, 845 (Ga. 1938)). Thigpen and his late wife, Barbara, had three children together. Thus, any relationship to Ms. Murphy survived Barbara's death.

The Court now turns its attention to whether "relative" is ambiguous. "In determining the meaning of words used in the insurance policy, dictionaries supply the plain, ordinary, and popular sense. Here, there being no definition of the [term "relative"] in the policy, [a] court [may] use the dictionary to determine the plain and generally accepted meaning of the term." See Alea London Ltd. v. Lee, 649 S.E.2d 542, 544 (Ga. Ct. App. 2007) (quoting Empire Fire & Marine Ins. Co. v. Daniels, 631 S.E.2d 799, 802 (Ga. Ct. App. 2006)). Merriam-Webster defines "relative" as one "connected with another by blood or affinity." MERRIAM-WEBSTER ONLINE DICTIONARY, http://www.merriam-webster.com/dictionary/relative. Similarly, Dictionary.com defines it as "a person who is connected with another or others by blood or marriage." DICTIONARY.COM, http://dictionary.reference.com/browse/relative?s=t. Finally, Black's Law Dictionary defines "relative" as one "connected with another by blood or affinity; a person who is kin with another." BLACK'S LAW DICTIONARY 1480 (10th ed. 2009). Thus, all dictionary

15

definitions consulted by the Court and cited by the parties include relation by marriage in the definition of the term, and Defendants present no contrary definition.

Instead, Day cites to various Georgia laws defining "relative." For instance, Georgia inheritance rules do not include a mother-in-law in the definition of "relative." O.C.G.A. § 53-2-1(c)(2). In contrast, juror disqualification laws apply to anyone who is related by affinity or consanguinity. O.C.G.A. § 15-12-135(a). These varying definitions of relative, according to Day, make clear that the term is susceptible to more than one meaning and thus is ambiguous.[4]

In addressing an similar issue, albeit under Florida law, the Fifth Circuit Court of Appeals recognized that the Court's role in determining whether a brother-in-law was a relative "is perhaps fortunately easier since the term is a neutral one in the sense that to be a relative is, on occasions, the status which affords insurance coverage, while in others the status works an exclusion of coverage. The sauce ought therefore to be

---

[4] Although Defendants cite a case out of the Supreme Court of Rhode Island for the proposition that the term "relative" can be ambiguous, that case, which is not binding on this Court, held that jurisdictions were split on whether the dissolution of marriage terminates all relationships created by affinity. Sjogren v. Metro. Prop. & Cas. Ins. Co., 703 A.2d 608, 611 (R.I. 1997). Importantly, the policy at issue in Sjorgren actually defined "relative," and the only dispute related to the effect of divorce on a stepson's status as a relative. Id. at 610-11. That issue, as noted above, has been conclusively established by Georgia courts. See Rutledge, 548 S.E.2d at 89.

for insurer and assured alike." Hamilton v. Maryland Cas. Co., 368 F.2d 768, 772 (5th Cir. 1966).[5] That court went on to find that with policies that extend "insurance to persons whose age, sex, physical, mental competence and moral responsibility are completely unknown [], there is no place for a narrow reading of 'relative.'" Id. In concluding that the brother-in-law was a "relative" for the purposes of the insurance policy, the court relied on "operational terms, not the legalism of wills, trusts, estate, and conveyancing," and this Court will do the same. See id. To read a distinction into "relative" based on affinity and consanguinity would likewise "thwart the intended breadth of the coverage as well as the reflext exclusions which are essential to prevent abuses." Id.

Thus, the Court finds that "relative" as used within the Travelers policy is not ambiguous and shall be read in its ordinary and plain meaning — to include both consanguinity and affinity. For that reason, the Court holds that Ms. Murphy, as mother-in-law, was Thigpen's relative at the time of the fire and thus falls squarely within the definition of "insured" within the Travelers policy exclusion. Because Ms. Murphy falls within the exclusion, any injury to her is not covered by the

---

[5] See Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1207 (11th Cir. 1981) (holding Fifth Circuit decisions made on or before September 30, 1981, are binding precedent in Eleventh Circuit).

17

Travelers policy and Travelers has no obligation to provide coverage or a defense to its insureds.

### IV. CONCLUSION

Based on the foregoing, Defendant Day's Motion for Summary Judgment (doc. 23) is **DENIED** and Plaintiff Travelers' Motion for Summary Judgment (doc. 29) is **GRANTED**. Having decided all pending issues in this matter, the Clerk is **DIRECTED** to enter judgment in favor of Travelers and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this 11th day of February, 2015.

_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA